IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUHARDI BUNARTO, as personal )
representative of the estate of )
HENNY HEUW, deceased, )
                                   Plaintiff, )   Case No.
                                           )
                v. )   PLAINTIFF DEMANDS
                                           )   TRIAL BY JURY
THE BOEING COMPANY, a corporation, )
                                           )
                                  Defendant. )

## COMPLAINT

NOW COMES Plaintiff, Suhardi Bunarto, as personal representative of the estate of Henny Heuw, deceased, and for his complaint against Defendant, The Boeing Company, states as follows:

### Jurisdiction and Venue

1. This civil action seeks recovery of compensatory damages arising out of a commercial airline crash on October 29, 2018 involving a Boeing Model 737-8 airplane operated as Lion Air Flight JT 610 that crashed into the waters of the Java Sea off the coast of the Republic of Indonesia killing all one hundred eighty-nine (189) persons on board.

2. Original jurisdiction exists in the District Courts of the United States pursuant to 28 U.S.C. § 1369, commonly known as the Multiparty, Multiforum Jurisdiction Act.

3. Venue exists in this District pursuant to 28 U.S.C. § 1391(b) as Defendant, The Boeing Company, resides in this district. Further, a substantial part of the events or omissions giving rise to the claims occurred in this district.

### Parties

4. Plaintiff's decedent, Henny Heuw, was born on October 10, 1962 in the Republic of Indonesia.

5. On October 29, 2018, Plaintiff's decedent, Henny Heuw, was a passenger aboard the airplane operated as Lion Air Flight JT 610, when the airplane crashed into the waters of the Java Sea near the coast of the Republic of Indonesia, causing her death.

6. On October 29, 2018, and at the time of her death, Plaintiff's decedent, Henny Heuw, left surviving her husband, Suhardi Bunarto, and her daughter, Novia Lavena.

7. On October 29, 2018, and at all times herein relevant, the husband and daughter of Plaintiff's decedent, Henny Heuw, and each of them, were and continue to be citizens and residents of the Republic of Indonesia.

8. Plaintiff, Suhardi Bunarto, is the duly appointed personal representative of the estate of Henny Heuw, deceased.

9. On October 29, 2018 and at all times herein relevant, Defendant, The Boeing Company, was and continues to be a for-profit corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

## Cause of Action - Wrongful Death

10. On or about June 30, 2012, Defendant, The Boeing Company, applied to the United States Federal Aviation Administration ("FAA") for an amendment to the existing FAA Type Certificate No. A16WE to add type certification of the design of a transport category aircraft designated as a Model 737-8 airplane.

11. That in applying for the aforesaid amendment to FAA Type Certificate No. A16WE, Defendant, The Boeing Company, represented to the FAA that the design changes in the Model 737-8 airplane from previous Model 737 series airplanes was not so extensive to require it to apply for a new type certificate as referred to in 14 C.F.R. § 21.19.

12. That part of the design changes in the Model 737-8 airplane from previous Model 737 series airplanes included a change to larger, heavier engines, to wit: Two CFM International S.A CFM LEAP-1B Series Turbofan Engines, which were cantilevered further forward on the wing.

13. That the design changes in the Model 737-8 airplane affected the center of gravity and aerodynamic center of the airplane, and consequently the longitudinal stability characteristics of the airplane which led defendant, the Boeing Company, in whole or in part, to incorporate a Maneuvering Characteristics Augmentation System ("MCAS") into the design of the Model 737-8 airplane.

14. As part of the FAA design approval process, Defendant, The Boeing Company, was required to obtain equivalent level of safety ("ELOS") findings from the FAA with regard to certain airworthiness requirements contained in 14 C.F.R.

Chapter I, Subchapter C which the Model 737-8 design did not meet, including ELOS findings related to the airworthiness requirements for its longitudinal trim system under 14 C.F.R. §§ 25.161(a), 25.161(c)(3), 25.1301(a), and 25.1309(a).

15. On or about March 8, 2017, the FAA approved the type design for the Boeing Model 737-8 airplane and it was added to FAA Type Certificate No. A16WE.

16. In or about July 2018, and pursuant to its design, Defendant, The Boeing Company, manufactured and assembled a certain aircraft, to wit: Model 737-8 model airplane, identified with airframe serial number 43000 (hereinafter "subject aircraft"), which it thereafter delivered to its original customer on or about August 13, 2018.

17. On and prior to October 29, 2018, Defendant, The Boeing Company, provided customer support to the owners and/or operators as it related to the subject aircraft and other Model 737-8 aircraft in their possession, including Alert Service Bulletins, Service Bulletins, Service Letters, technical advisories, aircraft parts, engineering and training personnel, and other like customer support services.

18. On October 29, 2018 and at all times herein relevant, there was in full force and effect a Bilateral Airworthiness Agreement between the United States of America and the Republic of Indonesia which provided in part:

> If the airworthiness authority of exporting state certifies to the airworthiness authority of the importing state that a product, for which a type design approval has been issued or is in the process of being issued by the airworthiness authority of the importing state, or by the airworthiness authority of another state with which the importing state has a reciprocal airworthiness agreement and in which the exporting manufacturer has a licensing agreement with the type design approval holder, conforms in construction to a type design description notified by

the airworthiness authority of the importing state and is in a condition for safe operation, the importing state shall give the same validity to the technical evaluations, tests, and inspections made by the airworthiness authority of the exporting state as if it had made them itself on the date of the certification by the airworthiness authority of the exporting state.

19. On October 29, 2018, the subject aircraft was being operated as Lion Air Flight JT 610 on a flight from Jakarta, Indonesia with an intended destination of Pangkal Pinang, Indonesia.

20. On October 29, 2018, Plaintiff's decedent, Henny Heuw, was a passenger assigned to seat 17D on the subject aircraft being operated as Lion Air Flight JT 610.

21. That on October 29, 2018 and at all times herein relevant, it was the duty of Defendant, The Boeing Company, to exercise a reasonable degree of care in its conduct, including but not limited to: (a) its conduct relating to the design of the subject aircraft, its manufacture, and assembly; (b) the contents of manuals pertaining to the operation, maintenance, and control of the aircraft, including instructions in its use and warnings in the operation and maintenance of the subject aircraft; and (c) its provision of customer support services, all so as not to cause injury to the person of the plaintiff's decedent, Henny Heuw.

22. Notwithstanding, Defendant, the Boeing Company, breached its duty of care to Plaintiff's decedent, Henny Heuw, in one or more of the following particulars:

a) Negligently and carelessly manufactured, assembled, and placed the subject airplane into the stream of commerce with a defective and unreasonably dangerous angle of attack sensor;

b) Negligently and carelessly manufactured, assembled, and placed the subject airplane into the stream of commerce with a defective and unreasonably dangerous angle of attack sensing system that failed to detect and isolate erroneous AOA sensor data;

c) Negligently and carelessly failed to properly inspect and test the angle of attack sensors and sensing system on the subject aircraft prior to placing it into the stream of commerce;

d) Negligently and carelessly placed the subject airplane into the stream of commerce when the design of the subject aircraft was defective in that the control system of the aircraft was not shown by analysis, tests, or both that it was capable of continued safe flight following a single point failure of the control system from an erroneous, high angle of attack sensor input, contrary to and in violation of 14 C.F.R. § 25.671(c)(1)

e) Negligently and carelessly placed the subject airplane into the stream of commerce when the design of the subject aircraft was defective in that the control system of the aircraft was not shown by analysis, tests, or both that it was capable of continued safe flight following any combination of failures not shown to be extremely improbable, including a failure of the angle of attack sensor and failure to activate breakout switches to stop resulting uncommanded automatic tail movement, contrary to and in violation of 14 C.F.R. § 25.671(c)(2);

f) Negligently and carelessly placed the subject airplane into the stream of commerce when the design of the subject aircraft was defective in that it contained a stability augmentation system that failed to comply with 14 C.F.R. § 25.671 and failed to provide a required warning which is clearly distinguishable to the pilot under expected flight conditions without requiring his attention for any failure in the stability augmentation system which could result in an unsafe condition if the pilot were not aware of the failure, contrary to and in violation of 14 C.F.R. § 25.672(a);

g) Negligently and carelessly misrepresented the design capabilities and limitations of the Model 737-8 aircraft to the FAA during its type certification process;

h) Negligently and carelessly placed the subject airplane into the stream of commerce to be operated for transport of passengers without providing proper and adequate instructions in its operation to pilot trainers and pilots, including improper and inadequate instructions in the Runaway Stabilizer Non-Normal Checklist regarding the deactivation of the airplane's stabilizer trim system;

i) Negligently and carelessly provided inadequate technical data and training regarding the MCAS to pilots transitioning to the Model 737-8 airplane, including that in prior 737 model airplanes, when an airplane experienced an uncommanded nose down movement of the stabilizer trim, a pilot could pull back on the yoke and raise the nose which, in normal flight mode, would activate breakout switches that stop any automatic tail movement, however in the Model 737-8 airplane with the MCAS activated, the breakout switches do not activate.

j) Negligently and carelessly gave improper and inadequate technical information and advice from its personnel in the United States of America to the operator of the subject aircraft in the Republic of Indonesia regarding the repair and maintenance of the angle of attack sensors, angle of attack sensing system, and MCAS;

k) Otherwise negligently and carelessly designed, manufactured, and assembled the subject aircraft; provided improper and inadequate instructions and warnings pertaining to the operation, repair, maintenance, and control of the aircraft; and provided improper and inadequate support and technical services to the operator of the subject aircraft in particulars to be determined by discovery herein.

23. On October 29, 2018 and as a direct and proximate result of the breach of duty by Defendant, The Boeing Company, the accident aircraft was caused to and did deviate from controlled flight and crashed into the waters of the Java Sea, further causing Plaintiff's decedent, Henny Heuw, to suffer bodily injuries resulting in her death.

24. Plaintiff's decedent, Henny Heuw, left surviving her husband, Suhardi Bunarto, and his daughter, Novia Lavena, for whose exclusive benefit this action is brought.

25. That as a result of the wrongful death of Plaintiff's decedent, Henny Heuw, the husband and daughter of Plaintiff's decedent, and each of them, have

suffered pecuniary and non-pecuniary damages including but not limited to loss of financial support and contributions, loss of inheritance, loss of household services, loss of her nurture, instruction, guidance and physical, intellectual and moral training, and loss of her care, comforting and companionship.

26. This action is brought pursuant to 46 U.S.C. § 30301, et seq., commonly known as the "Death on the High Seas Act" and/or other applicable law.

WHEREFORE Plaintiff, Suhardi Bunarto, as personal representative of the Estate of Henny Heuw, deceased, prays that judgment be entered in his favor and against Defendant, The Boeing Company, for compensatory damages in the amount of ten million dollars ($10,000,000.00) exclusive of attorney fees and the costs of this action.

/s/ Thomas P. Routh

Attorney for Plaintiff:

Thomas P. Routh, Esq.
NOLAN LAW GROUP
20 North Clark Street
30th Floor
Chicago, Illinois 60602

Tel: (312) 630-4000
Fax: (312) 630-4011
Email: contact@nolan-law.com